UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANTHONY BARNETT, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>SUPERINTENDENT, INDIANA )<br>STATE PRISON, )<br>)<br>    Respondent. ) | CAUSE NO.: 3:10-CV-157-TLS |

**OPINION AND ORDER**

The *pro se* Petitioner, Anthony Barnett, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] challenging his 2003 Floyd County convictions for burglary, battery, intimidation, and an adjudication that he is an habitual offender, for which he received an aggregate eighty year sentence. This matter is before the Court on the Petitioner's Amended Petition [ECF No. 39].

The Indiana Court of Appeals affirmed the Petitioner's convictions on direct appeal, and the Indiana Supreme Court declined to accept his petition to transfer. The Petitioner then filed a state court petition for post-conviction relief, which the trial court denied. (Chronological Case Summ. 21, ECF No. 18-1.) The Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief (Mem. Decision, ECF No. 18-12), and the Indiana Supreme Court denied transfer (Appellate Case History 6–7, ECF No. 18-7).

On June 25, 2012, the Petitioner filed a request to file a successive petition for post-conviction relief in the Indiana Court of Appeals, which that court denied on August 10, 2012. (Order, ECF No. 39-4 at 74.) Thereafter, with permission of this Court, the Petitioner filed an Amended Petition for Writ of Habeas Corpus [ECF No. 39] on November 20, 2012. The Respondent filed a Response [ECF No. 51] on May 3, 2013. The Petitioner did not file a traverse.

## BACKGROUND

In reviewing a petition for federal collateral relief from a state court judgment of conviction, this court must presume as correct the facts as found by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As stated by the Indiana Court of Appeals in its Memorandum Decision denying the Petitioner's petition for post-conviction relief on appeal, the facts related to his conviction are as follows:

> Cynthia Bogard quit working in 1996 to take care of David Carter, the father of one of her children. After David died, Bogard lived by herself and developed agoraphobia. Although she rarely left her home, in 2002 she met Jeanette Lewis on her way home from church. Lewis started bringing people to Bogard's house to smoke crack. Barnett and his brother, Herschel, were among the people who would use drugs at Bogard's house. On several occasions, Barnett brought along women who would have sex with him in exchange for drugs.
>
> Bogard sometimes smoked crack as well, but primarily, she wanted company and "just went along with what they did." After a while, Bogard began to feel uncomfortable because she was no longer in control of her home. Several times, Bogard asked Barnett to stop coming over, but he laughed at her requests.
>
> At the time, Barnett was divorced from his wife, Tonya, but they had begun living together again. On December 10, 2002, Bogard decided to call Tonya and tell her what Barnett was doing at her house in the hope that Tonya would stop it.
>
> That day, Herschel and someone named David came over to Bogard's house. While Herschel and David were there, someone began banging on the door so hard "it sounded like the door was gonna come open." Bogard "went to the door and I opened it up about this much, which is what I always do. I always look out the door before I open the door. And when I did that I saw that it was [Barnett] and he took and he pushed the door open." Bogard did not invite him in.
>
> Barnett pushed Bogard down and started screaming that she had "ruined his life with his wife." He said he had brought Rodney McNeary and "some girl from California" to help beat her up, and he also said he had a gun in the car that he always carried with him. He stomped on Bogard with his heel and threatened to kill her if she did

not call Tonya and recant. Herschel intervened, saying "she's an old lady, you're going to hurt her."

Barnett got the phone, dialed Tonya's number, and had Bogard talk to her. Bogard took the phone onto the back porch. Bogard told Tonya that Barnett was there and that he wanted her to say she had lied.

After speaking to Tonya, Bogard fled to her neighbor's house. Erin Rissler let her in, and Rissler's mother called the police. Bogard had a knot on her head that was bleeding, and her shoulder hurt. She had bruises on her shoulder, chest, and head. Dr. William Smock testified that one of the bruises on her chest near her shoulder was a pattern injury caused by the heel of a shoe. According to Dr. Smock, it takes "a hell of a lot of force" to cause a pattern injury, and falling against the edge of a table would not involve sufficient force to create a pattern injury. Dr. Smock testified the injury was consistent with Bogard's account of the attack.

Barnett was initially charged with Class C felony battery. An amendment to the information added an habitual offender charge, and a second amendment added charges of Class A felony burglary and Class D felony intimidation.

At trial, Tonya confirmed that Bogard had called her and told her Barnett was having sex with another woman. Barnett told Tonya that Bogard was lying, and he said he would "get it straightened out." Tonya then received a second call from Bogard. Bogard said she was "sorry for getting in the middle of this," but she denied having lied about what Barnett was doing at her house. Bogard also said she thought her shoulder was broken and she needed to go to the hospital. Tonya could hear Barnett "hollering" in the background. On cross examination, defense counsel asked Tonya whether she knew Barnett to carry a gun, and she said he did not. On redirect examination, the prosecutor attempted to impeach Tonya with a police report of a domestic dispute between Tonya and Barnett to establish that Barnett had access to a gun.

Barnett called Gary Brown, who testified he was one of the people who had used drugs at Bogard's house. On December 10, 2002, Brown happened to be passing Bogard's house when he saw Barnett knocking on her door. He approached Barnett to see what was happening. Brown testified Bogard opened the door and motioned for them to come inside. Barnett "said something to [Bogard] about why was she calling his wife," and told her "she needed to call his wife and get that straightened out." Bogard told him to leave, and it "looked like they wanted to collide." However, Bogard's dog got in the way, and she fell backwards over the dog. Brown claimed Bogard got up right away and did not act like she was hurt. Brown testified Barnett did not hit Bogard, kick her, or stomp on her.

Barnett also presented testimony of an expert witness, Dr. George R. Nichols. Dr. Nichols disagreed with some of Dr. Smock's conclusions, but acknowledged that the

3

pattern injury was not consistent with falling backwards over a dog.

Barnett was found guilty as charged.

(Mem. Decision 2–5, ECF No. 18-12 (citations and footnotes omitted).)

## STANDARD OF REVIEW

In evaluating a legal determination made by a State court, the United States Supreme Court has explained that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides as follows:

> [W]hen a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted). Furthermore:

> For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision. We look for the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.

*Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (quotation marks and citations omitted).

## ANALYSIS

### A.   Ineffective Assistance of Trial Counsel

In grounds one, two, and three of his Amended Petition, the Petitioner asserts that his

4

trial counsel was ineffective in that: he did not call two witnesses he mentioned in his opening statement and he mentioned an absent witness in his closing argument (ground one); he did not object to a police report used to impeach and did not object to the prosecutor's reference to the incident underlying the police report in closing argument (ground two); and he failed to impeach a key witness against the Petitioner (ground three). (Am. Pet. 3–4, ECF No. 39.)

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)) (additional citation omitted). The governing Supreme Court case is *Strickland*. To establish ineffective assistance of counsel under *Strickland*, the Petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced him. A court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). The prejudice prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner raised his ineffective assistance of counsel claims in his petition for post-conviction relief. The Indiana Court of Appeals properly identified the *Strickland* standard as governing the resolution of these claims. (Mem. Decision 6, ECF No. 18-12.) Accordingly, this

Court must determine whether the Indiana Court of Appeals unreasonably applied *Strickland* to the facts of the Petitioner's case.

In ground one of his Petition, the Petitioner asserts that his trial counsel was ineffective in that he did not call two witnesses he mentioned in his opening statement and he mentioned one of them in his closing argument. The Indiana Court of Appeals found that during *voir dire*, counsel for the Petitioner asked the prospective jurors:

> if anyone knew Gary Brown, Rodney McNeary, or Herschel Barnett. ln his opening statement, trial counsel mentioned that Barnett went to Bogard's house with McNeary. He also stated Herschel and Gary were in the living room and saw Bogard fall over her dog. In his case-in-chief, trial counsel called Gary, but not Herschel or McNeary.

(Mem. Decision 9, ECF No.18-12.) The Petitioner's trial counsel attended the post-conviction hearing, and explained why he did not call Herschel or McNeary as witnesses:

> In the case of Mr. McNeary and Herschel Barnett, their stories kept changing. When I would talk with them about it their stories kept changing. Gary Brown's story stayed, not only stayed consistent, but also reflected the events as my client had related them to me as to what had happened.
>
> I didn't want to put two or three witnesses on the stand that were going to tell different stories about what it, different-different facts about what had happened. I wanted Mr. Brown to tell one good solid recitation of what had, of what had happened and I thought he was, of the three he was the most credible, and he was the one that told a consistent story, and one whose story was consistent with the facts as my client had related them to me.

(*Id.* 10.)

The Indiana Court of Appeals conducted an extensive review of this claim (*see id.* 9–14), and reasonably concluded that it was not obvious that the jury inferred the Petitioner chose not to call Herschel and McNeary because they would give evidence favorable to the State. In fact, the Indiana Court of Appeals found that "the jury might just as well wonder why the State did not

call these witnesses." (*Id.* 13.) The Indiana Court of Appeals also found that the Petitioner's trial counsel tactically chose not to call Herschel or McNeary because they had changed their stories. (*Id.* 12, 14.)

Under *Strickland*, "evaluation of counsel's work as a whole is 'highly deferential' and . . . strategic decisions are 'virtually unchallengeable.'" *Bland v. Hardy*, 672 F.3d 445, 451 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689–90). The record in this case does not suggest that the decision not to call Rodney McNeary and Herschel Barnett was a mistake. Rather, the record establishes that the Petitioner's trial counsel made a reasonable strategic decision to call Gary Brown as a witness but not to call Rodney McNeary or Herschel Barnett. The Petitioner argues that while not calling a witness would normally be a lawyer's reasonable trial tactic, in this case the lawyer promised to call the witnesses in opening statement but did not follow through. The Indiana Court of Appeals found the Petitioner's trial attorney's actions reasonable because the stories of the potential witnesses kept changing, and because "*voir dire* and opening statements occurred nearly a month before trial counsel presented his case; thus, there was a significant window of time in which Herschel and McNeary may have changed their stories." (Mem. Decision 12, ECF No. 18-12.) The Court agrees with this analysis. The Seventh Circuit has noted that "[t]urnabouts" by trial attorneys "may be justified when unexpected developments warrant changes in previously announced trial strategies." *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003) (quotation marks and ellipses omitted). This was just such a situation, and the trial attorney's decision not to call two witnesses mentioned in opening statements thus appears to have been a reasonable one. Further, it does not appear that counsel for the Petitioner promised to call Herschel or McNeary in opening statement. Instead, counsel

7

for the Petitioner mentioned that they were present during the incident at Bogard's residence. Thus, the Petitioner's situation is distinguishable from a case where trial counsel promises in opening statement and does not follow through without explanation. *See id.* Finally, the Petitioner has not established that he suffered any prejudice from trial counsel's actions and he has failed to show that under these circumstances, the state court's adjudication of this claim was unreasonable. Accordingly, the Court will deny habeas relief on ground one of the Amended Petition.

In ground two, the Petitioner asserts that his trial counsel was ineffective for failing to object to a police report used to rebut testimony that his wife had never known him to have a gun. He argues that such use at trial violated a provision of Indiana's evidence rules. The Indiana Court of Appeals concluded that the police report was never admitted into evidence, and that an objection would not have been sustained to the State's questions to the Petitioner's wife to impeach her testimony that the Petitioner had never carried a gun and did not have one in her house. (Mem. Decision 15–16, ECF No. 18-12.)

The Petitioner insists that the use of the police report violated Indiana's rules of evidence. But "'federal habeas corpus relief does not lie for errors of state law.'" *Wilson v. Corcoran*, — U.S. —, 131 S. Ct. 13, 16 (2010) (*per curiam*) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)) (additional quotation marks and citation omitted). "'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Wilson*, 131 S. Ct. at 16 (quoting *Estelle*, 502 U.S. at 67–68). The Indiana Court of Appeals concluded that the police report was properly used to impeach Tonya under State law. That finding is conclusive on the Petitioner's claim that the document was improperly used under Indiana Rule of Evidence

404(b).

Further, the Petitioner argues that his counsel was ineffective for failing to object to the prosecutor's statement during closing argument that Tonya's testimony "helped establish that [Barnett] is violent [because] [i]n cross-examination we were able to point out that [the] same thing had happened to her, where he had threatened to kill her. There was a gun in the house and she called the police." (Mem. Decision 16, ECF No. 18-12.) The Indiana Court of Appeals agreed that the prosecutor's argument in this regard was objectionable, but held that "the failure to object to this argument was an isolated mistake that does not undermine our confidence in the outcome." (*Id.*) In concluding that the Petitioner had not established prejudice, the Court of Appeals cited the following evidence:

> Barnett's witness, Gary Brown, testified that Barnett was at Bogard's house on the date in question and said something to Bogard about her call to Tonya. Brown testified Bogard was injured when she fell backwards over her dog. However, Barnett's own expert witness acknowledged that this would not account for the pattern injury on Bogard's chest.

(*Id.*) Based on these facts, the Indiana Court of Appeals concluded that failure by the Petitioner's trial counsel to object to the prosecutor's comment in closing did not cost the Petitioner a reasonable chance for a different outcome.

A federal court may grant habeas relief if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Here, the Indiana Court of Appeals reviewed the Petitioner's claims under the *Strickland* standard, reasonably applied *Strickland* to his allegations, and rejected them. The Petitioner failed to establish ineffective assistance of trial counsel because he did not establish a reasonable probability that but for trial

counsel's alleged errors the result of the proceeding would have been different.

Accordingly, for all the reasons discussed, the Court will deny his request for habeas relief on the claims contained in ground two of the Amended Petition.

Finally, the Petitioner argues in ground three that his trial counsel was ineffective for failing to impeach Bogard with the investigation report in which the investigator summarized her initial statement as follows: "Bogard allowed Barnett into her home." (Mem. in Supp. of Am. Pet. 15, ECF No. 39-1.) The Petitioner argues that this impeachment evidence would have undermined Bogard's trial testimony that he forced his way into her residence, and would have supported Brown's trial testimony that Bogard let him into the residence. He concludes that his attorney's failure to use the investigation report to impeach was such a significant error that it prejudiced him under the second prong of *Strickland* by undermining confidence in the jury's finding on the burglary charge. The Respondent argues that the wording of the statement by Bogard was not inconsistent with her in-court testimony that she opened the door a crack and the Petitioner pushed it open to enter her residence. The Respondent also points to the Indiana Court of Appeals's finding that because a recording of the initial interview with Bogard was played for the jury, the jury could decide for itself whether Bogard in fact allowed the Petitioner into the residence. The Petitioner argues that because only a portion of the interview was recorded, Bogard must have mentioned allowing the Petitioner into the residence in an unrecorded portion of the interview. The Respondent argues in response that the Petitioner's argument as to the unrecorded portion of Bogard's initial interview is unsupported speculation, and that it was a reasonable decision by the Petitioner's trial counsel not to inquire into the unrecorded portion of Bogard's initial interview as it would likely have yielded more corroboration for her in-court

testimony.

>The Indiana Court of Appeals analyzed this claim by stating:
>
>The Report of Investigation was based on Bogard's interview with the police. The tape recording of that interview was played for the jury. The jury could hear for itself whether Bogard said that she allowed Barnett into her home. Therefore, we conclude that failure to use the Report of Investigation could not have prejudiced Barnett.

(Mem. Decision 7, ECF No. 18-12.)

As noted above, this Court may only grant habeas relief if the Indiana Court of Appeals applied the relevant federal standard unreasonably. *Wiggins*, 539 U.S. at 520. Here, it appears that the Indiana Court of Appeals analyzed this ineffective assistance of trial counsel claim under the second prong of *Strickland* and determined that the Petitioner could not have been prejudiced by his attorney's failure to use the language he identifies from Bogard's statement to impeach her with respect to his entry of her residence. Although the Indiana Court of Appeals did not discuss the recorded interview being only a portion of the entire interview, the Court finds that the Indiana Court of Appeals reasonably applied *Strickland* to the Petitioner's ground three claim. The Court agrees that once the jury had heard Bogard's recorded interview, the jury could judge for itself what Bogard related to the interviewer. As to the Petitioner's argument that some unrecorded portion of the interview must have been favorable to him, the Court agrees with the Respondent that the Petitioner's unsupported speculation does not merit habeas relief. Further, as the Respondent argues, Bogard's initial statement, in which she reported a battery, is not inconsistent on its face with her in-court testimony. She stated at trial that she opened the door partway and the Petitioner forced his way in after that. In the written statement the investigator wrote that she "allowed" the Petitioner entry to her residence. Without more detail from the written statement, it is not clear that the statement was inconsistent with Bogard's trial

testimony, and even if it had been used by the Petitioner's trial counsel for impeachment, it is not clear that such a statement would have changed the outcome at trial on the burglary charge. Even if trial counsel were unreasonable in not using the written statement for impeachment, such an error is not sufficient to undermine this Court's confidence in the outcome, particularly where the jury had the opportunity to hear Bogard's recorded interview, and where it was probably a reasonable trial tactic for Petitioner's counsel to refrain from further inquiry into the unrecorded portions of Bogard's interview. Therefore, the Court finds that the Indiana Court of Appeals reasonably applied *Strickland* to this claim, and the Court will deny habeas relief as to ground three of the Amended Petition.

### B. Effectiveness of Appellate Counsel

In ground four of his Amended Petition, the Petitioner asserts that his appellate counsel was ineffective by failing to argue that the burglary was part of an untimely addition to the charging information. (Am. Pet. 4, ECF No. 39.) In ground six of his Amended Petition, he asserts that his appellate counsel was ineffective for not including his claim that he was harmed because Juror Shirley Treat did not divulge during *voir dire* that she knew defense witness Gary Brown and that she had, in fact, previously had Brown arrested for statutory rape of her daughter. (*Id.* 6.)

In construing a claim of ineffective assistance counsel based on appellate counsel's failure to raise viable issues on appeal, the reviewing court must determine whether appellate counsel failed to present "significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not required to raise every nonfrivolous issue;

rather, counsel is entitled to, and should, select for argument the strongest issues and omit the rest. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). "The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005) (quoting *Lee v. Davis*, 528 F.3d 896, 900–01 (7th Cir. 2003)).

Petitioner alleges that his appellate counsel was ineffective for failing to challenge the State's second amendment of the charging information. The Petitioner's prospects for success in raising the claim that the burglary charge was part of an untimely addition to the charging information, and the reasonableness of his appellate counsel in opting not to do so, depend upon the interpretation of Indiana's procedural law by Indiana's courts. In this case, the Indiana Court of Appeals concluded that at the time of the Petitioner's trial, the governing statute permitted amendments of both form and substance so long as substantial rights of the defendant were not prejudiced. (*See* Mem. Decision 19–20, ECF 18-12.) Specifically, the Indiana Court of Appeals found that the Petitioner's appellate counsel had not been ineffective because the Indiana caselaw on the issue was not clearly in the Petitioner's favor, and "[a]n unraised issue is not 'obvious' if the interpretation of the legal authority that might have supported the issue was not obvious when appellate counsel filed the brief." (*Id.* 19.)

The Indiana Court of Appeals has concluded that any claim by the Petitioner that the burglary charge was an untimely addition to the charging information would likely have been unsuccessful under Indiana law. A federal court on habeas review is not in a position to review

13

and displace a state court's interpretation of its own law, and "federal habeas corpus relief does not lie for errors of state law." *Wilson*, 131 S.Ct. at 16 (quotation marks omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (quotation marks omitted). Because it appears that a challenge to the addition of the burglary charge would have failed under Indiana law, the Court cannot say that such a challenge was clearly stronger than the issues raised by counsel on appeal, nor that such a challenge was significant or obvious. The Court will, therefore, deny the claim of ineffective assistance of appellate counsel in ground four of the Amended Petition.

In ground six of his Amended Petition, the Petitioner asserts that his appellate counsel was ineffective for not including his claim that he was harmed because Juror Shirley Treat did not divulge during *voir dire* that she knew defense witness Gary Brown and had an acrimonious relationship with him. (Am. Pet. 6, ECF No. 39.) The Respondent argues that the Petitioner did not present this claim to the Indiana Court of Appeals in his appeal of the trial court's denial of his petition for state post-conviction relief, and that he has procedurally defaulted this issue.

Title 28 of the United States Code, § 2254(b)(1)(A) provides that an application for a writ of habeas corpus by a state prisoner cannot be granted unless "the applicant has exhausted the remedies available in the courts of the State." The exhaustion requirement is premised on concerns of comity; the state courts must be given the first chance to address and correct violations of their prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 846–47 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *O'Sullivan*, 526 U.S. at 845. Where a petitioner does not present a claim to the state courts, and where "it is clear that those courts would now hold the claim procedurally barred,"

*Perruquet*, 390 F.3d at 514, the claim will be barred on federal habeas review by procedural default.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90–91 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" that prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under this narrow exception, a habeas applicant must establish that a constitutional violation "has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Petitioner does not set forth any cause for his failure to exhaust his state court remedies as to this claim, nor does he present an actual innocence argument. Accordingly, his claim that his appellate counsel was ineffective for not arguing on appeal that he was harmed when Juror Shirley Treat did not divulge during *voir dire* that she knew defense witness Gary Brown is procedurally defaulted, and the Court will deny habeas relief as to this sixth ground of the Amended Petition.

### C. Alleged Bias of the Trial Judge

In ground five of his Amended Petition, the Petitioner asserts that his trial judge was biased against him. The Petitioner raised this claim in his state court petition for post-conviction relief, but did not raise it before the Indiana Court of Appeals until he filed his request to file a successive petition for post-conviction relief. The Respondent argues that this claim is barred by the doctrine of procedural default.

The Petitioner concedes in his Amended Petition that he did not present this claim to the Indiana Supreme Court. (Am. Pet. 6, ECF No. 39.) The Petitioner filed a request to file a successive petition for post-conviction relief raising the issue (*see* ECF No. 39-2 at 14), but the Indiana Court of Appeals denied him leave to file his proposed successive petition (*see* ECF No. 39-2 at 30). "[A]n appellant does not fully and fairly present a federal claim to the state courts when he raises that claim for the first time in a petition for rehearing before the state appellate court or in a petition asking the state supreme court to grant him leave to appeal." *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346 (1989); *Everette v. Roth*, 37 F.3d 257, 261 (7th Cir. 1994)). Because the Indiana Court of Appeals denied the Petitioner's request for permission to file a successive petition for state post-conviction review, his request did not salvage this claim from procedural default.

The Petitioner does not present an actual innocence argument, however he does attempt to present cause and prejudice to excuse his procedural default. He argues that one of the key exhibits supporting his claim of judicial bias was lost after he presented his petition for post-conviction relief to the Indiana trial court. Therefore, because this exhibit was lost through no fault of his own, the Petitioner argues that the Court should excuse his failure to present his

judicial bias claim to the Indiana Court of Appeals. Implicitly, the Petitioner also argues that he was prejudiced by his inability to bring this claim to the Indiana Court of Appeals. The Court disagrees with the Petitioner as to both cause and prejudice.

First, as to cause, the Petitioner argues he was prevented from bringing his judicial bias claim before the Indiana Court of Appeals because the post-conviction trial court lost an exhibit showing that his trial judge had previously recused himself from a divorce case between the Petitioner and his wife, Tonya. But as the Respondent points out, lack of the exhibit was not cause sufficient to prevent the Petitioner from bringing the judicial bias claim before the Indiana Court of Appeals. It appears that no actual impediment existed that would have prevented the Petitioner from properly presenting this claim to the Indiana Court of Appeals with the rest of his post-conviction relief appeal. Second, as to prejudice, the Petitioner argues that this claim had merit because the judge at his criminal trial had previously recused himself from the Petitioner's divorce trial, and because both parties to the divorce were significantly involved with the criminal trial. In discussing the merits of the Petitioner's claim of judicial bias, the Indiana Supreme Court noted that the Petitioner "has supplied no information about the reason for [the trial judge's] 1994 recusal or how it might have related to [the Petitioner's] criminal trial." (Indiana Supreme Court Order 2, ECF No. 29.)[1] Public officials are ordinarily presumed to have "properly discharged their official duties." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (quotation marks omitted). The Petitioner has presented nothing to suggest that the trial judge's decision not to recuse himself at the Petitioner's criminal trial actually prejudiced the Petitioner.

---

[1] The Indiana Supreme Court denied the Petitioner's request to re-open his post-conviction proceedings and informed the Petitioner that under Indiana Post-Conviction Rule 1, § 12, the appropriate procedure would be to request permission from the Indiana Court of Appeals to file a successive post-conviction petition. The Indiana Court of Appeals later denied the Petitioner's request to file a successive post-conviction petition. (Order, ECF No. 39-2 at 30.)

Accordingly, because the Petitioner has not presented cause and a resulting prejudice to excuse his procedural default, and has not asserted a fundamental miscarriage of justice, the Court will deny habeas relief on this fifth ground of the Amended Petition.

### D.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant the Petitioner a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). When a court denies a habeas claim on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order to receive a certificate of appealability. *Id.*

For the reasons stated in this memorandum, the Court concludes that grounds five and six of the Amended Petition are barred by procedural default and that his remaining claims are without merit. Nothing in the Petitioner's submissions suggests, let alone establishes, that jurists of reason could debate the correctness of this Court's conclusions on the merits or procedural ruling or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue the Petitioner a certificate of appealability.

**E.      June 17, 2013, Letter from the Petitioner**

The Petitioner filed a Letter [ECF No. 52] into the record on June 17, 2013. In his Letter, the Petitioner requests a copy of the Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit, the Circuit Rules, the Federal Rules of Appellate Procedure, and Court forms and checklists. The Petitioner notes that he is "preparing for everything or anything that might arise" but does not identify any basis for the Court to grant his requests. Because the Court finds that his Amended Petition is without merit, and because the Petitioner has no remaining petitions before this Court, the Court will deny the requests contained in the Petitioner's June 17 Letter.

**CONCLUSION**

For the reasons set forth above, the Court DENIES the Amended Petition for Writ of Habeas Corpus [ECF No. 39], DIRECTS the Clerk to close this case, and DENIES the Petitioner a certificate of appealability. Further, the Court DENIES the requests contained in the Petitioner's Letter [ECF No. 52] of June 17.

SO ORDERED on July 2, 2013.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

19