# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

ANTHONY BARNETT,  )
                                        )
     Petitioner,                   )
                                        )
     v.                               )        CAUSE NO.: 3:10-CV-157-TLS
                                        )
SUPERINTENDENT,         )
                                        )
     Respondent.                 )

## OPINION AND ORDER

This case is on remand from the Seventh Circuit to reconsider the Court's Opinion and Order [ECF No. 53] denying the Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 39], which challenged his state convictions for burglary, battery, intimidation, and an adjudication that he is a habitual offender. On remand, the Court must reconsider its prior ruling in light of *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013), which was decided subsequent to the Court's ruling. The matter at issue is "whether [the Petitioner's] appellate attorney rendered ineffective assistance for not raising on appeal a claim that the State's second amendment to his charges, which added two counts for burglary and intimidation, was error." (7th Cir. Order, ECF No. 70-1 at 1.) For the reasons stated in this Opinion and Order, the Petition Under 28 U.S.C. § 2254 is conditionally granted in part.

## BACKGROUND

Following his 2003 convictions in Floyd County, Indiana, the Petitioner raised two issues on direct appeal. First, the Petitioner's counsel argued "that the trial court improperly allowed the State to amend the information to include [a] habitual offender enhancement." (Ind. Ct. App. Mem. Decision, ECF No. 18-4 at 4.) The information charging the Petitioner was amended

twice. The issue raised on direct appeal only challenged the first amendment to the information. The second amendment to the information was not raised on direct appeal—and it is the basis for the ineffective assistance of counsel claim presented here.

The second issue raised on direct appeal was "that the trial court improperly denied [the Petitioner's] motion to correct error because a juror knew one of his witnesses." (*Id.* at 5.) The Indiana Court of Appeals set out the facts related to the two amendments to the information, as well as the juror misconduct issue:

> On December 13, 2002, the State charged [the Petitioner] with one count of Class C felony battery. The trial court set the omnibus date for January 7, 2003. On February 4, 2003, the State filed an amended information, which included an habitual offender allegation. On February 12, 2003, the State filed a second amended information charging [the Petitioner] with Class A felony burglary resulting in bodily injury, Class C felony battery resulting in serious bodily injury, Class D felony intimidation, and with being an habitual offender.
>
> A jury trial began on May 12, 2003, after which the jury found [the Petitioner] guilty as charged. After [the Petitioner] was sentenced, he filed a motion to correct error asserting that defense witness Gary Brown knew one of the jurors. The motion alleged that Brown had dated the juror's daughter and that the two had had a stormy relationship, thus, presumably affecting [the Petitioner's] credibility with that juror. The trial court denied the motion.

(*Id.* at 4.)

The Indiana Court of Appeals affirmed the Petitioner's state convictions, and the Indiana Supreme Court declined to accept a petition to transfer. The Petitioner then filed a state court petition for post-conviction relief, which the trial court denied. (Chronological Case Summ. 21, ECF No. 18-1.) The Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief (Mem. Decision, ECF No. 18-12), and the Indiana Supreme Court denied transfer (Appellate Case History 6–7, ECF No. 18-7). Thereafter, with permission of this Court, the

Petitioner filed an Amended Petition for Writ of Habeas Corpus [ECF No. 39], which was denied by the Court on July 2, 2013 [ECF No. 53].

On February 26, 2014, the Seventh Circuit issued an Order [ECF No. 70-1] vacating the judgment of this Court and remanding the case in light of *Shaw*. Both parties have submitted briefing [ECF Nos. 74 and 82], and the remanded petition is now ripe for ruling.

**ANALYSIS**

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To establish ineffective assistance of counsel under *Strickland*, the Petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced him. A court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). The prejudice prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Furthermore, as the Seventh Circuit noted in *Shaw*, 28 U.S.C. § 2254(d) "requires deference upon deference from federal courts reviewing the constitutionality of state criminal convictions." 721 F.3d at 914.

In ground four of his Amended Petition—the only ground for relief at issue here—the Petitioner asserted that his appellate counsel was ineffective by failing to argue that the burglary and intimidation charges, as included in the second amended information, were untimely pursuant to Indiana Code § 35–34–1–5 (1982).

**A.  Deficient Performance Prong**

In construing a claim of ineffective assistance counsel based on appellate counsel's failure to raise viable issues on appeal, the reviewing court must determine whether appellate counsel failed to present "significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not required to raise every nonfrivolous issue; rather, counsel is entitled to, and should, select for argument the strongest issues and omit the rest. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). "The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005) (quoting *Lee v. Davis*, 528 F.3d 896, 900–01 (7th Cir. 2003)).

In the Court's prior ruling, the Court found the following with respect to ground four of the Petition:

> The Petitioner's prospects for success in raising the claim that the burglary charge was part of an untimely addition to the charging information, and the reasonableness of his appellate counsel in opting not to do so, depend upon the interpretation of Indiana's procedural law by Indiana's courts. In this case, the Indiana Court of Appeals concluded that at the time of the Petitioner's trial, the governing statute permitted amendments [to an information] of both form and

4

> substance so long as substantial rights of the defendant were not prejudiced. (*See* Mem. Decision 19–20, ECF 18-12.) Specifically, the Indiana Court of Appeals found that the Petitioner's appellate counsel had not been ineffective because the Indiana caselaw [sic] on the issue was not clearly in the Petitioner's favor, and "[a]n unraised issue is not 'obvious' if the interpretation of the legal authority that might have supported the issue was not obvious when appellate counsel filed the brief." (*Id*. 19.) The Indiana Court of Appeals has concluded that any claim by the Petitioner that the burglary charge was an untimely addition to the charging information would likely have been unsuccessful under Indiana law. . . . Because it appears that a challenge to the addition of the burglary charge would have failed under Indiana law, the Court cannot say that such a challenge was clearly stronger than the issues raised by counsel on appeal, nor that such a challenge was significant or obvious.

(ECF No. 39 at 13–14.)

However, in *Shaw*, the Seventh Circuit reached the opposite conclusion in a markedly similar case involving an Indiana petitioner. In *Shaw*, the petitioner also argued that his appellate counsel's decision to forgo a challenge to the validity of the state's amended indictment constituted ineffective assistance of counsel. Although the Indiana Court of Appeals found that the unraised issue was not obvious, the Seventh Circuit noted the following:

> That a claim challenging the validity of the amended information would have been "obvious" at the time of Shaw's direct appeal is beyond question. [Appellate counsel] should have learned of the potential claim while reviewing the trial record because trial counsel carefully preserved it by objecting . . . [t]rial counsel's preservation of a claim can make it obvious. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) (finding challenge to improperly admitted evidence to be obvious because trial counsel had objected to the admission and described the issue in a "pre-appeal brief letter"). Considering in addition the language of [Indiana Code] Section 35–34–1–5 (1982) and the fact, stressed by Shaw, that dozens of similar (though unsuccessful) challenges were documented in published opinions, [appellate counsel's] abandonment of the objection to the amended information cannot be excused on the basis that the claim was obscure or novel.

*Shaw*, 721 F.3d at 916 (citation omitted).

And as to whether the claim challenging the validity of the amended indictment was "materially stronger" than the claim presented on direct appeal, the Seventh Circuit explained:

> Shaw is not asking (and has no reason to ask) that we second-guess an Indiana court on the meaning of Section 35–34–1–5. Shaw is making a simpler point: a competent lawyer in Indiana should have recognized that there was a state statute under which relief for his client was possible and would have pursued that theory on appeal. An argument about the validity of the state's effort to amend the indictment would have been materially stronger than the frivolous sufficiency-of-the-evidence point that [Shaw's attorney] raised. With that much accepted, there is no further role for the federal judiciary: whether the Indiana appellate court would have been persuaded, or if not, whether the Indiana Supreme Court would have granted transfer, is immaterial.

*Id.* at 914.

Here, the alleged statutory violation applicable to the Petitioner was the same as that which was applicable in *Shaw*. Indeed, the Indiana Court of Appeals even cited to its decision in *Shaw* as a basis for affirming the denial of the Petitioner's claim during his post-conviction appeal. (Mem. Decision, ECF No. 18-12 at 21 ("We addressed an argument similar to [the Petitioner's] in *Shaw v. State*, [898 N.E.2d 465, 470 (Ind. Ct. App. 2008), *trans denied*.]).) And similar to *Shaw*, the Petitioner's unraised claim was preserved by trial counsel. (*See id.* at 19 ("Trial counsel objected to the second amended information because it was untimely.").) Thus, in light of *Shaw*, the Court finds that the Petitioner's claim challenging the validity of the second amended information was neither obscure or novel, but "obvious" at the time of his direct appeal. The Court must now reconsider whether the challenge to the second amended claim was "materially stronger" than the claims raised on direct appeal.

**1.**    *First Claim on Appeal*

In the first claim, appellate counsel argued "that the trial court improperly allowed the State to amend the information to include the habitual offender enhancement." (Ind. Ct. App. Mem. Decision, ECF No. 18-4 at 4.) In denying transfer on direct appeal, the Indiana Supreme Court ruled that "to preserve the issue for appellate review the appellant was obligated to object to the appellee's amendment of the information, which the appellant did not do. Accordingly, the Court of Appeals' opinion correctly determined the appellant has not preserved the issue for review." (ECF No. 18-2 at 4; *see also* Ind. Ct. App. Mem. Decision, ECF No. 18-4 at 5 ("The failure to do so results in the waiver of the issue for appeal.").)[1] The unpreserved question of whether the State's first amendment of the information was proper is based on the same legal theory as the unraised, but preserved, question about the second amendment of the information. It is unclear why appellate counsel chose to pursue the unpreserved issue, while forfeiting the preserved issue, when both claims were based on the same legal argument. Nonetheless, the record reflects that the preserved issue as to the second amended information was the materially stronger claim.

---

[1] In its opinion denying the Petitioner post-conviction relief, the Indiana Court of Appeals noted that "[a]lthough counsel had been appointed for [the Petitioner], the chronological case summary reflects [that the Petitioner] was present at the hearing without counsel. [The Petitioner] did not object to the amendment." (ECF No. 18-12 at 18; s*ee* Chronological Case Summ., ECF No. 18-1 at 3 ("ST BY OWEN & DF W/O COUNSEL. INT HRG ON AMEND INFO HELD.").) The court of appeals further observed that "[t]he record does not reflect the reason he was without counsel [during the initial hearing on the first amendment to the information]." (ECF No. 18-12 at 20.)

It is unclear why appellate counsel did not raise the absence of counsel at that hearing as an issue in the direct appeal. It is disconcerting that the Petitioner was found to have waived an issue at a hearing where he was without counsel. If the State permits the Petitioner to file another direct appeal, this is an issue that warrants further exploration. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) ("[T]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable."); *United States v. Cronic*, 466 U.S. 648 (1984).

7

**2.** *Second Claim on Appeal*

In the second claim, appellate counsel argued "that the trial court improperly denied his motion to correct error because a juror knew one of his witnesses." (Ind. Ct. App. Mem. Decision, ECF No. 18-4 at 5.) Counsel argued that the juror lied during voir dire. In affirming the conviction on direct appeal, the Indiana Court of Appeals found that "[the Petitioner] d[id] not provide [the court] with a transcript of [voir dire] or with any other record that the juror actually lied about knowing [the witness]." *Id.* at 6. The voir dire portion of the trial transcript on direct appeal merely states:

> VOIR DIRE CONDUCTED
> PANEL OF 12 JURORS AND 1 ALTERNATE SELECTED AND SWORN

Trial Record at 6.[2]

In this case, the notice of appeal filed by appellate counsel on direct appeal only requested the transcripts of "the trial and sentencing hearing conducted in this cause of action and all pleadings filed with the said court as part of said proceedings." (Appellant's App. at 293.) By not requesting the transcript of voir dire for the direct appeal, appellate counsel made it impossible to comply with Indiana Appellate Rule 46(A)(8)(a), which requires that "[e]ach

---

[2]As noted in *Wright v. State*, Indiana court reporters often omit voir dire from trial transcripts:

> [I]t is standard practice in some areas of the state for reporters to omit voir dire and opening and closing statements from the transcripts unless specifically requested in the Notice of Appeal. The readily apparent reason for this practice is that those portions of the proceedings are frequently lengthy and are typically not the basis for issues on appeal. The omission of those portions thus saves most litigants hundreds, if not thousands, of dollars with respect to the preparation cost of the transcript. Those litigants who wish to raise issues requiring those portions of the proceedings are free to specifically request that they be transcribed. In other words, no litigant is deprived of the opportunity to raise issues contained therein if the proper procedure for requesting the transcription is followed.

772 N.E.2d 449, 462 (Ind. Ct. App. 2002).

contention must be supported by citations to . . . parts of the Record on Appeal." Although voir dire was discussed during argument on the motion to correct errors and the trial judge agreed to listen to the recording of the relevant portions of voir dire, none of that recording was played at the hearing and transcribed into the record presented on direct appeal. Moreover, in the transcript of that hearing that was submitted with the direct appeal, the deputy prosecutor stated that, "I think then she responded here later for some reason . . . and brought it to our attention . . . I think she, in passing said she knew of some of the, that she had heard of [the Petitioner] and a few others." (Supplement to the Trial R. at 35.) The order denying the motion to correct errors—which was also submitted as a part of the record on direct appeal—made no mention of what was said during voir dire. (*See* Appellant's App. at 295.) As noted by the Indiana Court of Appeals, there were simply no facts in the appellate record which supported appellate counsel's argument.

Additionally, the Indiana Court of Appeals explained that "[e]ven if we were to assume that the juror's action amounted to misconduct . . . [t]here is no evidence that [the Petitioner] was harmed by the juror's actions." (Mem. Decision, ECF No. 18-4 at 6.) "In order to warrant a new trial, there must be a showing that the [juror] misconduct was gross, and that it probably harmed the defendant." *Dickenson v. State*, 732 N.E.2d 238, 241 (Ind. Ct. App. 2000). Despite appellate counsel's citation to and recognition of *Dickenson* as controlling law, the appellate brief did not address the prejudice prong of the test. (*See* Appellant's Br. at 9, ECF No. 18-3 at 13.) Although appellate counsel sought for the court to infer prejudice based on the past relationship between the juror and the witness, the testimony given by the witness did not support such an inference. In fact, the Indiana Court of Appeals noted the following:

9

> [The witness] testified that although he recognized the juror immediately, he did not have any concerns about her being on the jury. [The witness] acknowledged that he did not think that his relationship with the juror's daughter would endanger [the Petitioner's] trial. In fact, [the witness] testified that he thought the juror knowing [the witness] would benefit [the Petitioner].

(Mem. Decision, ECF No. 18-4 at 6.)

Thus, not only did the juror misconduct claim lack a factual basis in the record, it also required an inference of prejudice in the face of the uncontradicted testimony of the witness that his prior contact with the juror likely biased her in favor of, rather than against, the Petitioner. In contrast, a factual basis existed for the unraised claim. (Mem. Decision, ECF No. 18-12 at 19 ("Trial counsel objected to the second amended information because it was untimely.").) Again, why appellate counsel decided to pursue the juror misconduct claim, while forfeiting the claim that the second amendment to the information was untimely, is unknown.

Accordingly, in light of *Shaw*, the unraised claim—which was preserved by a timely objection and supported by a factual basis in the record—was materially stronger than the claim related to juror misconduct.

### B. Prejudice Prong

The Court now turns to the prejudice prong of *Strickland*. Although the Indiana Court of Appeals did not explicitly find that the Petitioner had failed to demonstrate prejudice, its quotation from *Shaw v. State* explaining that "[a]ppellate counsel would not have been able to demonstrate prejudice because Shaw had been granted a continuance[,]" (*Id.* at 21 (quoting *Shaw v. State*, 898 N.E.2d 465, 470 (Ind. Ct. App. 2008)), implicitly stated that the Petitioner had not satisfied the prejudice prong of *Strickland*. Moreover, it is not relevant "whether or not the state

10

court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

> Here, the analysis of prejudice is guided by *Shaw*:
>
> > On the question of prejudice, the Indiana appellate court said simply that Shaw, because he was given extra time to prepare for trial, was not prejudiced by the court's granting of the prosecution's motion to amend. But that takes too narrow a view of the matter. *Strickland* requires us to ask whether there is a reasonable probability that, but for [appellate counsel's] unprofessional errors, the result of Shaw's direct appeal would have been different. In assessing prejudice, we must bear in mind once again that we are making a comparative inquiry about counsel's choices; we are not resolving any issue of state law, and we are not telling the Indiana judiciary how it should approach this issue. Prejudice exists, however, if counsel bypassed an nonfrivolous argument that, if successful, would have resulted in the vacation of Shaw's conviction . . . . If one is entitled to a dismissal, a continuance is no comfort. And when evaluating prejudice, unlike when evaluating attorney performance, hindsight is permissible.

721 F.3d at 918 (quotation marks, brackets, and citations omitted).

Once again, the Petitioner's claim that the second amendment of his information was untimely has the same legal basis and the same legal consequences as the claim raised in *Shaw*. Like *Shaw*, the amendment added a new charge against the Petitioner. And, as in *Shaw*, if the Petitioner were to obtain relief on this claim, his conviction on the new charges would be vacated.

As previously explained, the validity of the State's second effort to amend the information would have been materially stronger than both the waived first amended information claim and the speculative, factually unsupported claim of juror misconduct that were raised. "With that much accepted, there is no further role for the federal judiciary: whether the Indiana

11

appellate court would have been persuaded, or if not, whether the Indiana Supreme Court would have granted transfer, is immaterial." *Id.* at 914. In light of *Shaw*, the Court must conclude that it was unreasonable for the Indiana Court of Appeals to have found that the Petitioner was not prejudiced by his appellate counsel's failure to raise a claim based on the State's untimely second amendment to the information.

**C.     Relief**

The relief to which the Petitioner is entitled is also guided by *Shaw*. "[T]he relief to which Shaw is entitled is a new direct appeal. Should Indiana choose to grant this relief, instead of releasing Shaw outright, the Indiana appellate courts will be free to consider all pertinent issues of state law at that time." *Id.* at 919. Similarly, the Petitioner is entitled to a new direct appeal. The State can decide whether to release the Petitioner or grant him a new direct appeal with the assistance of counsel. If the State has not granted him leave to file a new direct appeal within 120 days of this Order, the Petitioner must be released. If he is granted a new direct appeal, nothing in this Opinion and Order limits what issues counsel may raise in that appeal. Therefore, habeas corpus relief will be conditionally granted. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one.").

**CONCLUSION**

Because the performance of the Petitioner's appellate counsel was deficient and he suffered prejudice as a result, the Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody [ECF No. 39] is CONDITIONALLY GRANTED as to Ground Four of the Amended Petition. Within 120 days of this Order, the State must either release the Petitioner or grant him leave to file a new direct appeal with the assistance of counsel.

SO ORDERED on June 1, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION